

# SUPREME COURT OF MISSOURI
## en banc

| | | |
|---|---|---|
| STATE EX REL. STATE OF MISSOURI DEPARTMENT OF NATURAL RESOURCES | ) ) ) ) | *Opinion issued March 18, 2025* |
| Relator, | ) ) | |
| v. | ) ) | No. SC100623 |
| THE HONORABLE KEVIN CRANE, | ) ) ) | |
| Respondent. | ) | |

## ORIGINAL PROCEEDING IN PROHIBITION

The Department of Natural Resources ("the department") seeks a writ of prohibition barring Respondent from proceeding further on the plaintiff's personal injury claims. Because the Recreational Use Act, §§ 537.345 to 537.347 and 537.351[1] ("the Act"), protects the department from liability in this case, the Court's preliminary writ of prohibition is made permanent.

## Background

In March 2020, Scott Frey was injured while riding his bike on the Katy Trail. Frey paid no entry fee or other charge to enter the trail and was riding the trail for

---

[1] All statutory references are to RSMo 2016 unless otherwise noted.

recreational purposes only. During his ride, Frey crossed bridge spanning Terrapin Creek in Boone County. Frey alleges he was injured when the tire on his bike became lodged between the wooden motor-vehicle reinforcements that recently had been installed on the bridge.

The department manages the Katy Trail State Park, which includes a 78-mile stretch of the trail from Pilot Grove to Mokane. At the time of Frey's accident, the department owned the Terrapin Creek bridge and adjoining portions of the trail on which Frey was injured. The bridge is not within the corporate boundaries of any city, municipality, town, or village in Missouri.

The Terrapin Creek bridge, like the rest of the Katy Trail, is used for recreational purposes. The surface of the bridge is made of wooden planks the width of the bridge, running perpendicular to the direction of travel. The wooden motor vehicle reinforcements consist of two long planks on each side of the single-lane bridge, running in the direction of travel. The reinforcements on each side of the bridge were fixed to the deck with approximately a one-inch gap between them.

The reinforcements had been installed on the bridge by a department employee in late February or early March 2020, just weeks before Frey's accident. Department employees also attached to each end of the bridge yellow and black signs reading "CAUTION ROUGH SURFACE" to warn those crossing about the motor-vehicle reinforcements. Prior to Frey's accident, the department employees responsible for installing the reinforcements had not witnessed or learned of any injuries caused by the

2

reinforcements or had any other basis for believing the reinforcements posed a risk to trail users.

Frey filed a suit for damages against the department claiming his injuries were caused by the dangerous condition of the bridge that resulted from the negligent acts or omissions of department employees in installing the vehicle reinforcements. The department sought summary judgment on the ground that it could not be liable under the Act or the doctrine of sovereign immunity or both. The circuit court overruled the department's motion. The department was denied a writ of prohibition in the court of appeals and now seeks such relief in this Court. A preliminary writ of prohibition was issued, and the matter has now been briefed and argued.

**Standard of Review**

This Court has the authority to issue and determine original remedial writs. Mo. Const. art V., sec. 4.1. A writ of prohibition is appropriate when a defendant is entitled to sovereign immunity, *State ex rel. Bd. of Trs. of City of N. Kan. City Mem'l Hosp. v. Russell,* 843 S.W.2d 353, 355 (Mo. banc 1992), or is otherwise immune from liability, *State ex rel. Morales v. Alessi*, 679 S.W.3d 467, 473 (Mo. banc 2023) (granting a writ of prohibition when defendants were entitled to official immunity). "Sovereign immunity is not a defense to suit but, rather, it is immunity from tort liability altogether, providing a basis for prohibition." *State ex rel. City of Grandview v. Grate*, 490 S.W.3d 368, 369 (Mo. banc 2016). The same must be true for the protections granted under the act. *Cf. State ex rel. Young v. Wood*, 254 S.W.3d 871, 874 (Mo. banc 2008) (granting a writ of mandamus to compel dismissal under the Act). If the department has established an

3

uncontested factual basis for relief under either the Act or sovereign immunity, it is entitled to judgment as a matter of law, and a writ of prohibition will issue to compel that result.

## Analysis

"The [Act] creates tort immunity for landowners who open their land to the public free of charge for recreational use. The purpose of the [Act] is to encourage the free use of land for recreational purposes in order to preserve and utilize our natural resources." *Foster v. St. Louis Cnty.,* 239 S.W.3d 599, 601 (Mo. banc 2007) (internal citations and quotation marks omitted). The Act provides:

> Except as provided in sections 537.345 to 537.348, and section 537.351, an owner of land owes no duty of care to any person who enters on the land without charge to keep his land safe for recreational use or to give any general or specific warning with respect to any natural or artificial condition, structure, or personal property thereon.

§ 537.346. The Act goes on to provide:

> [A]n owner of land who … permits any person to enter his or her land for recreational use, without charge … does not thereby … [a]ssume responsibility for or incur liability for any injury to such person or property caused by any natural or artificial condition, structure or personal property on the premises[.]

§ 537.347(3).

To establish immunity under the Act, therefore, the department must show: (1) it owned the land or structure where Frey was injured; (2) Frey entered that land or structure; (3) Frey's entry was without charge; and (4) Frey's entry was for recreational purposes. *Wood*, 254 S.W.3d at 873. Uncontested facts support each of these elements.

4

It is undisputed the department owned the portion of the trail on which Frey was injured.[2] In addition, it is undisputed that Frey was not charged to enter the trail or cross the Terrapin Creek bridge.[3] Finally, it is undisputed that Frey entered the trail (and crossed the bridge) for recreational purposes. He admits he entered to ride his bike and claims no commercial or other non-recreational purpose. It is plain Frey visited the Katy Trail State Park for the same reason that countless other Missourians and out-of-state visitors do — i.e., for fun, enjoyment, and recreation — thereby fulfilling the stated mission of the Missouri State Park system "to preserve and interpret the state's most outstanding natural landscapes and cultural landmarks, and to provide outstanding recreational opportunities compatible with those resources."

There are exceptions to the Act's protections, but Frey argues only one of them applies in this case. Section 537.348 states:

> Nothing in this act shall be construed to create liability, but it does not limit liability that otherwise would be incurred by those who use the land of others, or by owners of land for: (1) Malicious or grossly negligent failure to guard or warn against a dangerous condition, structure, personal property which the owner knew or should have known to be dangerous, or negligent failure to guard or warn against an ultrahazardous condition which the owner knew or should have known to be dangerous ….

---

[2] For purposes of the Act, "Owner" is defined as "any individual, legal entity or **governmental agency** that has any ownership or security interest whatever," and "Land" is defined as "all real property, land and water, and **all structures**, fixtures, equipment and machinery thereon." § 537.345 (emphasis added). Under these definitions, the department qualifies as an owner of both this portion of the trail and the Terrapin Creek bridge.

[3] Under section 537.345, "Charge" is defined as "the admission price or fee asked by an owner of land or an invitation[.]" Users of the trail are not charged a fee.

5

In other words, this exception provides that the department would be liable for: (a) its maliciousness or gross negligence in failing to protect Frey from or warn him about a condition or structure the department knew or should have known was dangerous; or (b) its negligence in failing to protect Frey from or warn him about an ultrahazardous condition the department knew or should have known was dangerous. Section 527.348 does not create liability under these circumstances; it simply does not limit or remove any liability otherwise imposed by law for such conduct.

The undisputed evidence falls far short of showing the department knew or should have known that the spacing between the vehicle reinforcements created a risk of injury, much less that the department acted with maliciousness or gross negligence in failing to protect Frey from that risk or warn him about it. By the same token, it cannot be argued the spacing of the vehicle reinforcements was an "ultrahazardous" condition. The department had no knowledge of any incidents relating to the vehicle reinforcements between the time they were installed and the time of Frey's accident just weeks later, and the Department had not otherwise been warned by Katy Trail users that the reinforcements were dangerous. On these facts, this exception in section 537.348 cannot apply.

Frey argues that, even if the department owed him no duty under the Act, the department employees owed him (and all trail users) a general duty of care not to create an unreasonable risk of harm. If this is so, Frey contends the department is liable to him – not for its own negligence, because it owed him no duty of care – but under

6

*respondeat superior* for the negligence of its employees who did owe such a duty.[4]

Though this argument surely merits high marks for creativity, it just as surely cannot

succeed.

Section 537.346 speaks in terms of removing any duty owed to those who enter an

owner's land without charge for recreational purposes, but section 537.347(3) expressly

provides that the owner who does so does not thereby "incur liability for any injury to

such person … caused by any natural or artificial condition [or] structure[.]"  Frey's

argument violates the plain language of this statute because it results in the department

"incurring liability," regardless of the route taken to establish that liability.

In addition, Frey's argument frustrates the obvious purpose and intent of the Act

by rendering its protections illusory in most circumstances.  There are, it may be

supposed, land owners who themselves perform whatever work is needed on their land.

Many owners, however, if not most, will hire others to perform such tasks.  And some of

the "owners" as defined in 537.345 will have no choice but to do so.  Non-human owners

such as "legal entities" and "governmental agencies" can act ***only*** through their agents

and employees.  Under Frey's argument, only human owners who do the work

---

[4]  Frey is not suing any department employees and is not required to sue them to bring a *respondeat superior* claim against the department for actions of its employees in the course and scope of their employment.  *Comment Note: — Necessity of verdict against servant or agent as condition of verdict against master or principal for tort of servant or agent*, 78 A.L.R. 365 (Cum. Supp.) ("The right to sue and recover against the master or principal for a tort of his servant or agent, without joining the latter in the action or recovering against him first, is too firmly established to require the citation of authority for the rule.").

themselves are protected by the Act because every other owner – while not liable directly because none of them owe a duty under the Act – will be vicariously liable for the actions of its agents and employees. An argument that compels such absurd results must be flawed.

The flaw in Frey's argument is its premise, i.e., that a landowner's employees can be liable for the conditions of the land or structures even though the landowner is not. This is not correct. "One who does an act … upon land on behalf of the possessor is subject to the same liability, ***and enjoys the same freedom from liability***, for physical harm caused thereby to others and upon and outside of the land ***as though he were the possessor*** of the land." Restatement (Second) of Torts § 383 (1965) (emphasis added). The next section of the Restatement reinforces this point:

> One who on behalf on the possessor of land erects a structure or creates any other condition on the land is subject to the same liability, ***and enjoys the same freedom from liability, as though he were the possessor*** of the land, for physical harm caused to others upon and outside of the land by the dangerous character of the other condition while the work is in his charge.

*Id*. at § 384 (emphasis added).[5]

Frey's argument depends entirely on the idea that the department's employees owed Frey a duty of care that did not depend upon or derive from the department's duty

---

[5] *See Giles v. Moundridge Milling Co.*, 173 S.W.2d 745, 751 (Mo. banc 1943) (stating "the agent [of the owner] should be held responsible for injuries caused by the condition of premises in the possession or under the control of the agent where the condition is one for which he is responsible and the injury is such as he ***would be liable for if he were controlling the premises on his own account***" (emphasis added)); *Barnett ex rel. Barnett v. Equal. Sav. & Loan Ass'n, Inc*., 662 S.W.2d 924, 927 (Mo. App. 1983) (finding a general contractor could not be held liable when the jury had found the business owner who had hired the contractor was free from liability).

of care (which the Act eliminates). Even if this were so in an ordinary employment setting (e.g., a driver owes other drivers the same duty of care whether they are working or not), the Restatement makes clear this is not so – and should not be so – when the plaintiff's injuries are caused by the conditions of or structures on someone else's land. In those situations, the landowner's employee stands precisely in the landowner's shoes with respect to liability to third parties; no better and (of primary importance in this case) no worse. Because the department owed no duty to Frey under the Act, it cannot be liable to him and neither can its employees. With no basis to hold the department's employees liable, Frey's efforts to circumvent the Act and impose liability on the department under *respondeat superior* must fail.

### Conclusion

As set forth above, the department cannot be liable to Frey under the Act for injuries he sustained on the trail, when he entered the trail without charge and for the purpose of recreation. Accordingly, the circuit court erred in failing to enter judgment as a matter of law in the department's favor.[6]

This Court's preliminary writ of prohibition is made permanent.

_____
Paul C. Wilson, Judge

All concur.

---

[6] Because the Department is entitled to judgment under the Act, the Court need not and does not address its sovereign immunity claim.